Our first case in the morning is 410-0871 for the appellant, Mr. Panicki, for the appellee, Mr. Reed. You may proceed. Police, court, counsel, good morning. I have three basic arguments, each one I think is sufficient in itself. The first one is the document itself, on its face, authorizes the agent to do what he did within the four corners of the document. There's a general grant of power claim that basically says if the principal could do it, the agent could do it. There's an interpretation clause that says this shall be construed as a non-statutory power of attorney and that the enumeration of specific items does not limit the general durable powers granted herein. There's a case that suggests otherwise, but I think it's easily distinguishable. That's Fort Dearborn Life. I don't think there's any case that says that a non-statutory general power of attorney does not authorize acts that are not specifically enumerated therein. Fort Dearborn is close, but Fort Dearborn is a case where there was a non-statutory power of attorney. There was a clause in there that appointed the agent, quote, with respect to powers as defined in Section 3.4 of the Short-Form Statutory Power of Attorney Act. Section 3.4 specifically disallows changes of beneficiary. So that's my first argument. Argument number two is the power of attorney specifically does authorize the agent to do what he did. Under Paragraph 1D, the banking powers, A8 of the appendix, the banking powers allow the agent to acquire and redeem certificates of deposit. At no time did the agent change the beneficiaries of CDs that had not matured. He redeemed them. He acquired them. At the end of the process, he named different beneficiaries. The effect is the same. He named himself. Yes. Well, he was named previously with his sister. I'm just sort of struck by the way you said different beneficiaries, and he named himself. Correct. Different than the original CD which named him and his sister, and he named himself. Correct. I didn't mean to mislead. So in each of the CDs, it's indicated in Appellee's Brief, each of the CDs contains a reference to a prior CD that was replaced by a new or renewed CD. My third argument, which I hope is compelling, is that there are thousands, maybe tens of thousands, of non-statutory powers of attorney out there. If we take Appellee's position that unless the non-statutory power of attorney specifically authorizes an act, then I would think that there have to be hundreds of thousands of transactions that were authorized under the general grant of powers clause but not specifically enumerated in the non-statutory power of attorney that would be unauthorized and presumably void. In regard to the witnesses. Is it your position that there are no limitations on what your client could do regarding the certificates of deposit once they mature? There's a single limitation. There's a presumption that he can't deal with it to his benefit. If he does, he has to overcome that presumption. But other than that, I think the general grant of power allows him to do whatever the principal could do. I think that's my position. Yes. So how was it to the benefit of Mr. Nichols for your client to renew the CD with just his name on it? How did it benefit the principal? Yes. It was neutral to the principal. The principal owned the CD during his life. He could cash it in. He could spend it. It didn't affect him during his life. And during his death, of course, it went to Walter Nichols, the agent. Kendall being the principal. Kendall Nichols being the principal. So it did not benefit. But I think that's a different question. The court has said this power of attorney didn't authorize him to do what he did. If this court finds that it did authorize him to do what he did, then the question comes up since he's self-dealing and there's a presumption of fraud, can he overcome that presumption with proof? And that's why I think Judge Bell's order in regard to the witnesses is incorrect too in the sense that he thinks I'm calling witnesses or he suggested in his order that I'm calling witnesses to clear up any ambiguity that would allow evidence to be considered ambiguity in the certificates of deposit or the power of attorney. I'm not. I'm calling witnesses to overcome the presumption that my client's self-dealing in the principal's property is fraud. And I can overcome that presumption. The Dead Man's Act doesn't prevent me calling bank witnesses. It prevents people who have a direct interest in the outcome of the litigation from testifying, but it doesn't prevent me from calling witnesses who have no interest in the outcome. Did he cite the Dead Man's Act as the reason you were barred from calling these witnesses? He said the Probate Act and the parole evidence rules, by recollection. What in the Probate Act? Is he referring to the Dead Man's Act? I don't understand it. I don't understand Judge Bell's reasoning, so I can't justify his answer. I don't believe I'm calling witnesses. Because the Dead Man's Act isn't in the Probate Act. It's a separate provision. Correct. But I don't think the Dead Man's Act prohibits me from calling witnesses to overcome the presumption that my client's transaction is fraud. The reason I ask that is you seem to be setting the straw man. If he didn't cite the Dead Man's Act as the reason for his ruling, then... Oh, I'm responding to Mr. Reed, to the appellee's brief, who suggested the Dead Man's Act. Okay, go ahead. So what I intended to do was call bank witnesses as to these transactions who are not directly interested. And I think there's a couple of red herrings, if I may suggest that. There's an argument, perhaps, that the non-statutory power of attorney was not executed or witnessed as the statutory power of attorney would be. And the Power of Attorney Act, Section 3, indicates that nothing in this Act invalidates or bars a different form, or that it must be executed. The only thing that has to be done is execute it by the principle and designate powers. It need not be acknowledged or conformed to the statutory power of attorney execution. And that's my argument. I have nothing further. On the communications issue, the conversations issue, why didn't you make an offer of proof? I failed to? Well, I don't know. I mean, the answer is I failed to. In retrospect, I wish I had made an offer of proof. But, I mean, my position would be that if you rule this is a valid power of attorney and you overturn Judge Bell's in that regard, we're going to go back to court. And I think at that point, I can convince him that witnesses can testify not to explain either the certificate of deposit or the power of attorney, but to overcome the presumption of fraud. You're absolutely right. Well, I understand that you think your first argument is the strongest, but are you essentially conceding that the failure to make an offer of proof makes it very difficult for us to review the meaning of what would have occurred whether the motion eliminated should or should not have been granted? I am conceding that, but I think that the transcript of the proceedings indicate that the witnesses would have testified as to what the principle would have said about these transactions. I believe that's clear from the transcript. I don't mean to misstate the evidence or overstate it, but I believe that's clear. One other question about this. Before Nichols' death, I guess you call him Kendall? Kendall. He's the principal, yes. Okay. Before Kendall's death, some certificates of deposits were renewed and the beneficiaries were changed to your client. Walter. Pardon? Walter. Walter. Yes. And Kendall was still on the certificates of deposit as well. Is that right? That's right. It was the petitioner or the respondent in this case who wasn't the sister who was removed from being beneficiary of the certificates of deposit? Correct. Is there a requirement that this act of his be in furtherance of Kendall's interest since he's a fiduciary? And if so, how was it? I believe that the only thing that – no, I do not believe that's a requirement. I believe that the only thing that the agent is required to do is to carry out Kendall's principal's wishes, to do what the principal wants him to do, and not fraudulently enrich himself. There's a presumption of fraud, but it can be overcome. As long as he doesn't fraudulently enrich himself against the wishes of his principal. Well, why wouldn't this – why wouldn't the circumstances suggest that it was contrary to the principal's interest since his – the principal's will, a few months earlier, had named them both as beneficiaries and now CDs were cutting out Beverly Shores. Right, but people do their estate planning with wills and with joint tenancy and payable on death aspects for some of their assets. He didn't need to have a will. He had this power of attorney that gave the person absolute power to do anything. So the will is meaningless. As all powers of attorney do. But the will wasn't completely meaningless. There is an estate that is different than the certificates of deposit. So, I mean, a testator can say, I want these payable right away upon my death, so I'll name them payable on death. And for some other reason, I want to give my estate pursuant to my will. I don't see a conflict between those two. And I don't see where – Can you point to anything in the will that suggests that this was the testator's intent? No. No. And it's your argument that these general powers and the power of attorney give him the right to do anything? Unless it's fraudulent. Give me an example. Maybe this is my difficulty, counsel. Give me an example, since you said less fraudulent. In the context of this case, what would be something fraudulent? All right. The certificate of deposit matures and Walter, the agent, goes down and issues a new one in his name. And Kendall needs medical care. So he leaves Kendall off of it? Yes. That would be fraudulent. Okay. But the principal, as long as the agent is carrying out the principal's wishes, I believe that general powers of attorney, non-statutory powers of attorney, do not require that every specific act be authorized as statutory powers of attorney do require. What is the evidence, though, in the case before, is that the fiduciary here, your client, was carrying out the principal's interests? In other words, we don't have a situation here where your client, Walter, wrote up this change in the new CDs, cutting out Beverly Shores, where Kendall was asked by the vice president of the bank, Mr. Nichols, is this what you want to do? You are now just going to have yourself and Kendall is the beneficiaries of the new CD and Beverly Shores is not going to be on there. Is that what you want? And he would say yes. Assuming that had happened, this would be a rather different case, wouldn't it? We never got to that point. Yes, it would be a difficult case. But we don't have that. And because I didn't make an offer of proof, I can't argue that. But that's what would make a record show that the fiduciary was acting in accordance with the principal's interest and wishes. That's exactly why I would call bank witnesses to do that. We don't. As Mr. Sinek pointed out in the record before us, we don't have any evidence like that. We just have essentially an assumption. I understand. But we're not here to overcome the presumption of fraud. The first issue is, is this power of attorney valid? If it doesn't authorize him to do what he did, it doesn't make any difference whether he was engaged in fraud. Well, I didn't understand the judge's ruling to say it wasn't valid. I think it was a violation of his fiduciary interest. Isn't that what he said? No. Maybe I misunderstood. I don't believe he said that. I believe his order said, after careful consideration the court finds that durable power of attorney did not allow a respondent to name or change the beneficiaries of the certificates of deposit in this case. The court finds no authority that would allow Walter Nichols to change beneficiaries either within the general grant clause or the banking powers. I'm sorry, he didn't say the power of attorney was void. He said it didn't authorize the change of beneficiaries. Well, but isn't that maybe shorthand for saying because it's abused his fiduciary position? No. I don't believe it's shorthand for that. You mean Judge Bell's head, you have the evidence presented that the vice president of the bank heard from Kendall, yeah, that's what I want to do. Judge Bell would have said, I'm sorry, you can't do it. I don't think that's what he meant. I don't know, and I can't overstate the evidence, but what Judge Bell did say is that regardless of whether there was the bank president coming in there to testify, he didn't have the power under this power of attorney to change beneficiaries. And there's two questions. One is does what he did amount to a change of beneficiaries? It's the same thing granted, but technically he didn't change beneficiaries. He had new certificates of deposit with a different beneficiary himself as opposed to the two. And secondly, I just think that non-statutory powers of attorney do not have to specifically enumerate every single action taken. If I'm correct that this is perhaps an unartful way of putting it by Judge Bell, but Judge Bell wasn't saying the power of attorney didn't authorize it. He was saying this is an abuse of the fiduciary position your client was in. That is just a matter of proof. Whether there was evidence to overcome the seeming violation of the fiduciary interest to demonstrate clear and convincing evidence that this is in fact what the principal wanted. We never got there, and that's why this is an interlocutory appeal because he said, we're never going to get to the question of fraud. He couldn't do this. The power of attorney did not authorize him to do it, therefore it's invalid. We never get to the question of fraud or overcoming presumptions. Is that the position that Mr. Reed took at trial, that the power of attorney didn't authorize it, or that it was fraudulent? Well, you were there, weren't you? I was there, but I don't want to misstate his. He can do a better job of telling you what he did.  Thank you. Thank you. Thank you. May it please the Court, David Reed on behalf of Beverly Shores. I am here today to assert that there was no relief available for the appellant. To assert what, sir? Pardon me? I didn't hear what you just said. You're here to assert what? That there is no relief available to the appellant. The appellant argues first that the Fort Dearborn case is misapplied. However... Let me ask you what I just had asked him. Is it your position that the power of attorney generally didn't authorize any of this? Yes, sir. That's our position. So, even if the principal, Kendall as he's called, had been there with the bank president, Mr. Connector, and said, yes, this is exactly what I want to do. I want to change it. And I told Walter here, go ahead and change this. And Connect, being the careful guy he is, had asked, is he sure this is what you want to do? And he says, oh, yeah. He's doing what I want him to do. That's still no good? Well, I believe not. Why is that? Because, again, we had argued that there were other provisions that we think would have thrown out if the appellant had gotten by that issue as far as the intent and independent third-party witnesses to argue that this was his intent. We still reserved arguments about conflict of interest, abuse of fiduciary relations, and all those things. Like his will was overborne? Would that have been your claim? I'm not sure I understand what the problem would have been. For Kendall himself? Let's assume Kendall is the guy who is signing the new certificates of deposit, and he eliminated your client. And he just made the beneficiaries of the new certificate when it matures himself and Walter. Would that have been okay? No. Even the principal couldn't have done that? Well, the principal could have done that, but there's no evidence that the principal would want to do that. Well, I'm just waiting to try to understand your argument. In the scope of what you are wanting us to say, Mr. Panicki is arguing that you are arguing that all kinds of powers of attorney would not be valid, and based upon what you just said, maybe he's right. That's your position. Well, our initial position is that the subject power of attorney, non-statutory durable power of attorney, did not allow Mr. Kendall Nichols to do what he did. I'm sorry, Mr. Walter Nichols, the agent, to do what he did. That's our first step. And then we also argued on evidentiary issues that in the motion, hearing on motion and limine, we argued that Walter K. Nichols, the agent, could not testify as to what the Kendall Nichols, the principal, wanted him to do, and we were sustained on that. And then also with respect to the bank employees, we argued that the bank employees could not testify as to what they were told over the telephone by Kendall Nichols, the principal. Why is that? Under the cases that were cited in the state of Ryman, which is a 4th District case that says that you can't make an argument where verbal guidelines would change any will. That's under the Probate Act. But this was a matured C.D. changing beneficiary, wasn't it? Yes, sir, it was. But I think the same reasons or same evidentiary objections would apply. Well, there are rather more strict requirements regarding wills than there are C.D.s, aren't there? Well, if you look at the case of Romanowski, in that case, the 1st District Court said that even if the principal had been there and advised the bank that she wanted changes made, it wasn't sufficient because the agreement with the bank between Kendall Nichols and the bank was a contractual agreement that had to be changed in writing. You couldn't make oral representations. But here it was changed in writing by the power of attorney, and the phone call, the representation is, would merely have confirmed the question of, is this in fact what Kendall wanted? Isn't that all the call would have done? Now, we don't have an offer of proof, but leaving that aside for the moment, that's the representation anyway. I think if there had been a new contract, and again the Certificate of Deposit is a contract, and if there had been a new contract entered into between the bank and Walter K. Nichols, the agent, I think that you would have something there, but there was never a new contract. This goes back to the Certificate of Deposit contract between the principal, Kendall. But didn't Kendall wait until the CD matured? As I understood, he didn't change any existing CDs. These were all CDs that had matured, and he was setting forth new beneficiaries on new CDs after the old ones had matured. Am I right on that? No, you're right about that. I don't think that matters, respectfully, Judge. But then the new, aren't the new CDs new contracts with Kendall and his power of attorney? No, I think they relate back to the original contract. Why is that? Because they're being renewed, and the terms, and I think if you look at the Certificate of Deposit, the terms itself say it's a renewal, the original contract clause will apply. In this case, the agent, Walter Nichols, never signed any agreement with the bank. He's not on any signature card other than when he became co-executor. We also think that if you look at the Illinois Power of Attorney Act, the Article 2 Durable Powers of Attorney, when you look at the purpose of the Durable Power of Attorney Act in the statute, it clearly says that the purpose was to clarify the power of the individual to authorize an agent to make financial and health care decisions for the individual. In the case here, we've got Walter Nichols making decisions for himself. He wasn't representing... Well, that's how it appears, but what if, in fact, this was Kendall's wish? Then it should have been done in writing. It should have been a contract that was entered into with the bank. So only Kendall could have entered into it? His power of attorney could do it? Well, we would argue that Kendall should have done it. Of course, Kendall should have done it in writing. It should have been a new contract, a new CD. The power of attorney, Walter K. Nichols, should have been designated. He should have been a signer on it also. In the alternative, the Durable Power of Attorney should have specifically provided that there was this power to change beneficiaries of a certificate of deposit. See, that's what concerns me. That argument seems to be both unnecessary for your position and something where you're asking us to come up with a statement that would have broad effect over powers of attorney, and I'm not sure it's either correct or desirable. Well, I think, respectfully, judges, I'm asking the court to recognize the Fort Dearborn decision, which specifically throws out, in my view, specifically throws out these durable, non-statutory powers of attorney, where clients attempt to cobble together general grant clauses, tax powers. But so we're clear, if Kendall is sitting there in the vice president's office of the bank, at the request of the banker, saying, I just want to make sure, Mr. Nichols, that this is your wish, because Walter K. Nichols has presented us with this new CD, and it's just fine, but is this what you want to do? And he says, yes, that's what I told Walter I wanted to do. It's your position that's still not enough. Yes, sir. It should have been changed in writing. It should have been a contractual agreement. So that if the change in writing by the fellow with the power of attorney isn't enough, even in the adoption of that, even if the approval of that by the principal, right there in the banker's office. Well, verbally, yeah, it's not sufficient. Again, it should have been, in my view, it should have been a written certificate of deposit, and by doing so, you would not violate the parole evidence rule. What if Kendall had, or Walter had taken the money out when the CD matured, and he and Kendall had gone to Europe for a hell of a vacation for six weeks at the end of his life? Would your client have a complaint? Well, that's, I'm not sure, you know. Well, would you be happy? I think that, again, the judge's rule... In that situation, you would have had more evidence of Kendall's wishes. Yes, sir. And, again, in this case, and if you look at the third issue raised in my brief, we state that the bank employees are barred from testifying with respect to any alleged telephonic directions from William Kendall Nixon, I'm sorry, William Kendall Nichols, regarding his intent. So I think that, respectfully, your situation's a different one than the facts in this case. Did you object to that on the grounds that it would violate the Dead Man's Act? We objected. In the motion preliminary, I specifically objected to the testimony of Walter Nichols under the Dead Man's Act. What about the people from the bank? I objected that it wouldn't have made any... that they couldn't... their testimony would have been irrelevant under the parole evidence rule, probate law, and relevancy rules. What part of probate law did you mean? The case in re-estate of Ryman, R-E-I-M-A-N, that states on page 881, it says, no argument has been made by the executor that the direction to him to distribute in accordance with the testator's verbal guidelines as provided in paragraph 4 is a valid testamentary disposition. No such argument could, in fact, be made since it is fundamental that any disposition by way of verbal guidelines is prohibited by section 4.3 of the Probate Act of 1975. I think, again, we get back to the durable non-statutory power of attorney. And I agree with counsel that there probably are thousands of situations out there where a bank would accept a power of attorney, a non-durable power of attorney, I'm sorry, a durable non-statutory power of attorney where something's done that isn't prohibited. But that's not our issue, and that's not our case. We're here today on the fact whether this specific durable non-statutory power of attorney allowed it, and it's our position it did not. Did this power of attorney allow, say the CD comes due, would it allow the attorney to place the funds in a checking account and then write checks to pay utility bills and things like that? Yeah, I think that would have been permitted. Could he have written checks for himself? Well, I guess that would get back to whether it was reimbursement for something or what was the purpose of the check. If it was just a gift to himself, and under the power of attorney we're looking at and under the tax powers clause, I think you could argue that if he made gifts of which is now $13,000 or less to each of the beneficiaries to try to decrease the estate, I think that would have probably been acceptable. But again, that's not the issue. We're here today. This case today is about... Well, what about, following up on Justice Cook's question, what if it's in a checking account and the principal, Kendall, is sitting in the banker's office and says, because Walter's been such a prince and given me good care and advice, I want to make a gift to him of $10,000 in cash and as a gift from the checking account. And he says, gee, that's nice, but we ought to make sure it's clear that it's your wishes. And so that's why I'm here to tell you that, yeah, that's what I want to do. So when he writes this $10,000 check, you understand it's my wishes. Would that be okay? I think that in that situation, I think that the gift clause in the power of attorney, or the tax powers and the ability to make gifts, probably... It's not to reduce his estate. He just wants to make a gift. Well, I think under the tax powers, there's clearly an effort to recognize that gifts may be made. Again, it would be my view that that would be for the position of reducing estate tax. I suppose what I'm getting to is, I'm asking if this is an evidentiary question. That is, if there's sufficient evidence that this is what the principal's wishes are, then it seems to me the person who holds the power of attorney should pretty much be able to do anything that the power of attorney in the general terms wishes. Whereas here, Mr. Panicki had a discussion with Justice Connect about this. Maybe we don't have the offer of proof we would need to show exactly what evidence was barred. But if there had been affirmative evidence in this case that Kendall wanted to do exactly all of this, it seems to me what the hump I can't get over is that you're saying, no, even in the face of the video of Kendall sitting there in the banker's office, not good enough. Well, I think the additional point that I would like to make on the certificates of deposit, I talk about it in section Roman numeral 3 of my brief. But these were contracts between the principal, Kendall, and the bank. Right. And in order to change those contracts, they have to be in writing. It has to be... But isn't the whole purpose of a power of attorney for a third person to be empowered to act in writing on behalf of the person who gave up the power of attorney? I mean, I thought that's... We have elderly parents around here who don't want to be bothered with signing documents and whatnot. They're not quite totally demented, let's say, but they just don't want to be doing this stuff anymore and they give up power of attorneys to their kids to handle all this. Isn't that what's going on routinely? And isn't that authorization assigned in their name? I think it's case-by-case, Judge. And I think, too, under the statute, Justice, under the Illinois Power of Attorney Act, section 45-2-9, it talks about preservation of estate plans and trust. And it also, I think, once requests or suggests that the agent look at or if he or she is aware of the estate plan, they have to recognize that. And the agent... The statute says the agent shall attempt to preserve the plan, but the agent shall not be liable to any plan beneficiary under this section unless the agent acts in bad faith. And again, I think we're back to Walter Nichols changing about $600,000 from sharing with his sister to himself where the Power of Attorney didn't specifically authorize it and there's no evidence that Kendall Nichols wanted it. But you don't have to win this case by arguing that the Power of Attorney didn't specifically authorize it. It seems to me you could win this case by arguing that this was a breach of the fiduciary interest in the absence of any evidence to demonstrate that this is what Kendall wanted. Well, I accept that. No doubt, but the broadness of your argument is the one that kind of couples me in the first instance. Well, again, I think if you get back to the Fort Dearborn case specifically states that... And I'm looking at a quote here. It should be noted that even if we were to assume that the Power of Attorney executed by Paul Downing in 1990 was a non-statutory property power governed by the Durable Power of Attorney Act, the result we reach would be no different. Again, I think that the Durable Power of Attorney that we have, non-statutory, clearly it wouldn't qualify under statutory because it specifically requires that the power to change beneficiaries be included. We're saying even if that under the Durable Power of Attorney, the non-statutory, it doesn't qualify under this case, under the Fort Dearborn case, and we're suggesting that the court adopt that. Thank you, counsel. Thank you. Thank you. Briefly, Fort Dearborn doesn't apply. Fort Dearborn Power of Attorney adopts Section 3.4 of the Power of Attorney Act which specifically says that the agent can't change beneficiaries. But Fort Dearborn does say even if this was not a short-form statute or statutory power of attorney, the same result. Because of the limitation in the Power of Attorney itself, the limitation that adopts Section 3.4 that says that the agent can't change beneficiaries. That's how I read it. But anyway, this is an interlocutory appeal. We never got to the question of fraud. We never got to there. The court said this Power of Attorney didn't authorize him to do it. The court wouldn't hear testimony about whether he overcame the presumption of fraud because we never got to that point. You know what amazes me about this case is you didn't make the offer of proof and now you're up here using that as a tool to make your argument. Judge, we didn't make an offer of proof so we waived the issue. But Judge, we don't know what those facts would be. We cannot assume that there's fraud in this case. If the evidence had been admitted, maybe we would have shown that the testator intended this. My point is that we didn't call the witnesses to either overcome or add to the presumption of fraud. We never got to that point because the judge said, well, this Power of Attorney doesn't authorize him to do it. It doesn't make any difference. But you didn't make an offer of proof. That's correct. I didn't because I don't... And so now you're commenting on evidence that you didn't have in the case. I don't mean to comment on that evidence. What I'm saying is that it would have been irrelevant at that point. He wouldn't have... We couldn't have introduced evidence about a transaction under a Power of Attorney which didn't authorize him to do it in the first place. If it didn't authorize him to do it in the first place, what difference does it make whether it's fraudulent or non-fraudulent? That's why we're here on an interlocutory appeal. I don't mean to comment on evidence that wasn't in or blame the court for not hearing evidence. I don't even... Well, Mr. Panicki, it seems to me that you picked up on the broadness of the argument being made by Mr. Reed and you've attacked that. But what about... As I just indicated, I'm not sure he needs an argument that broad. It seems to me if we have a fiduciary here, there's a presumption that this change is contrary to self-enriching and not in the principal's interest. That's the presumption of self-dealing that has to be rebutted that wasn't and it seems to me that that's the basis upon which to affirm the trial court. Leaving aside entirely any question about the broadness that Mr. Reed now has argued to us. Why isn't that the case? Because we never got to that point. We never got to the point where whether or not evidence overcame the presumption of fraud could be introduced. The court said this power of attorney didn't allow him to do it. Why would the court hear evidence as to whether the presumption of fraud could be overcome? It said he couldn't do it in the first place and that's why we're here. Mr. Reed said something about the fact that I don't think it matters that the CDs had already matured and technically he wasn't changing the beneficiary on a presently existing CD. I do think it matters. I think it allows Mr. Walter Nichols to do what he did. I don't think the signature card is important. The court's order in regard to witnesses is there's no ambiguity that would allow oral evidence to be considered by the court. I think he was focusing on either the power of attorney or the certificates to deposit themselves not evidence overcoming presumption of fraud. Thank you. Thank you, counsel. We'll take the matter under advisory.